**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ISOM ROGERS,

    Defendant - Appellant.

No. 18-5008
(D.C. No. 4:17-CR-00111-CVE-1)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **McHUGH**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.
_____

Isom Rogers violated a mandatory condition of his supervised release (not to commit any further federal, state, or local crimes) when he assaulted a woman with whom he was romantically involved. Based on this violation, the district judge[1]

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Rogers was convicted and sentenced in the United States District Court for the Northern District of Iowa, and the Eighth Circuit affirmed his sentence; however, jurisdiction over his supervised release was transferred to the Northern District of Oklahoma in October 2017.

revoked his supervised release and sentenced him to 24 months in prison. Rogers now appeals from that revocation and sentence. Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm.

## I.    Background

In 2010, Rogers pleaded guilty to two counts of bank fraud. The judge "discuss[ed] at length his unusually violent criminal history" and imposed 120 months' imprisonment, an upward variance from the advisory Guidelines range. *See United States v. Rogers*, 415 F. App'x 752, 753 (8th Cir. 2011) (affirming the sentence). In 2014, after serving the custodial portion of his sentence, Rogers embarked upon his 5-year term of supervised release.

In November 2017, the probation office petitioned the district court to revoke Rogers' supervised release, citing the following violations of his conditions of supervision:

- Mandatory Condition No. 1 ("The defendant shall not commit another federal, state, or local crime.");

- Standard Condition No. 1 ("The defendant shall not leave the judicial district without the permission of the court or probation officer.");

- Standard Condition No. 3 ("The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.");

- Special Condition No. 3 ("The defendant must pay any financial penalty that is imposed by this judgment.");

- Standard Condition No. 7 ("The defendant . . . shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician."); and

2

- Standard Condition No. 11 ("The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.").

R., Vol. I at 8-9. Upon his arrest, Rogers insisted he did not violate the mandatory condition but stipulated to the remaining violations and waived his right to a revocation hearing on them. This appeal centers on the district court's finding that Rogers violated the mandatory condition, as well as the substantive reasonableness of the ensuing sentence.

According to the government, Rogers "physically assaulted Tiffany Rochelle Clary, a romantic partner, by jumping on top of her, pressing her face into a pillow, choking her, and forcefully dragging her by her hair" on May 2, 2016, in violation of Oklahoma Statute Title 21, § 644.1. R., Vol. I at 8. Focusing on this incident during a two-day revocation hearing on November 17 and 30, 2017, the district court found by a preponderance of the evidence that Rogers violated the mandatory condition by assaulting Clary (the petition to revoke was based on allegations of assault and domestic abuse). The advisory Guidelines range for this violation was 12 to 18 months, but at the sentencing hearing on January 25, 2018, the district judge concluded a longer sentence was warranted. Noting Rogers' "dangerous pattern of violence" since age 12, she sentenced him to 24 months' imprisonment. R., Vol. II at 104. Rogers filed this timely appeal.

## II.    Analysis

Rogers asserts: (1) the finding of a violation of the mandatory condition was error, given Clary's lack of credibility; and (2) the 24-month sentence was not

3

substantively reasonable. As explained below, he has not overcome the highly deferential standard of review applicable to sentencing decisions.

## A. Violation of Mandatory Condition

A court may "revoke a term of supervised release[] and require the defendant to serve in prison all or part of the term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). One mandatory condition of supervised release is "that the defendant not commit another Federal, State, or local crime during the term of supervision." § 3583(d). "A violation of this condition may be charged whether or not the defendant has been the subject of a separate federal, state, or local prosecution for such conduct." U.S. Sentencing Guidelines Manual § 7B1.1 cmt. n.1 (U.S. Sentencing Comm'n); *see, e.g.*, *United States v. Fleming*, 9 F.3d 1253, 1254 (7th Cir. 1993) ("A conviction is not a prerequisite to the revocation of probation.") (per curiam). The failure to follow a court-imposed condition of supervised release is a "breach of trust," which is punishable as a separate wrong. *United States v. Porter*, 905 F.3d 1175, 1180-81 & n.3 (10th Cir. 2018) (citing USSG Ch. 7, Pt. A(3)(b)).

Michael Woolridge, a probation officer, testified on the first day of the revocation hearing. To substantiate the government's assault allegations, he referenced his interview of Clary and her handwritten victim statement dated November 14, 2017. He also referenced Oklahoma state court records, including the citizen's police report Clary filed when she sought a protective order in 2016 and the protective order itself. Additionally, he discussed other violent incidents involving

4

Rogers, including two which resulted in women obtaining protective orders against him in 2015 and 2017. Even so, Woolridge acknowledged a discrepancy in Clary's account as to the date of the incident, her failure to appear at the final hearing on the protective order, and her own past legal troubles and expunged conviction. Because the assault allegations hinged on the victim's credibility,[2] the district court continued the revocation hearing to evaluate Clary personally, as part of "the totality of the circumstances." R., Vol. II at 33. Clary testified on the second day.

Citing Clary's credible testimony and circumstantial evidence presented during the revocation hearing, the judge found by a preponderance of the evidence "that Mr. Rogers did commit a state crime" by assaulting Clary. *Id.* at 88. She specifically noted "a history of almost identical behavior" (such as "choking, dragging by the hair, making threats, and calling names"). *Id.* at 87-88. The presentence report in Iowa detailed three separate instances of such behavior, and Woolridge testified about the behavior after reviewing protective orders in police records for those cases.

Rogers now argues the evidence was insufficient considering Clary's testimony, which had too many "holes" and was not credible. *See* Aplt. Opening Br. at 24. He also faults the judge for considering Woolridge's testimony about similar

---

[2] This Circuit used to apply a "reliability test" to determine whether hearsay evidence could be considered at a revocation hearing, allowing "the admission of hearsay evidence without a showing of cause for the declarant's absence if the evidence [was] sufficiently reliable." *United States v. Jones*, 818 F.3d 1091, 1098 (10th Cir. 2016). But we now follow a "balancing test" to determine whether a witness should appear, balancing the accused's confrontation rights against the government's good cause for not producing a witness. *Id.*

assaults.  *See id.* at 25 ("It is obvious that Woolridge's testimony regarding similar matters, which were not listed as violations, played a large part in influencing the district court.  Such bootstrapping was error.").

"We review the district court's decision to revoke supervised release for abuse of discretion."  *United States v. Jones*, 818 F.3d 1091, 1097 (10th Cir. 2017) (internal quotation marks omitted).  An abuse of discretion occurs when a district court "relies on an incorrect conclusion of law or a clearly erroneous finding of fact."  *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013).  A factual finding is clearly erroneous if the record does not support it "or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made."  *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017) (internal quotation marks omitted).

This standard requires "substantial deference" to district courts.  *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (internal quotation marks omitted).  Such deference extends both to a district court's factual findings and to "its determinations of the weight to be afforded to such findings."  *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008).  The sentencing judge has a unique perspective because he is able to "see[] and hear[] the evidence," "make[] credibility determinations," "gain[] insights not conveyed by the record," and obtain "full knowledge of the facts."  *Gall v. United States*, 552 U.S. 38, 51 (2007) (internal quotation marks omitted).  The judge also "has access to, and greater familiarity with, the individual case and the individual defendant."  *Id.* (internal quotation marks

6

omitted). Furthermore, "district courts have an institutional advantage over appellate courts" when it comes to sentencing determinations because they resolve more Guidelines cases. *Id.* at 52 (alterations and internal quotation marks omitted).

After a careful review of the transcripts from the revocation and sentencing hearings, we conclude the evidence showed a violation of the mandatory condition of supervised release—committing no further crimes. The judge carefully explained and supported her finding; there was no abuse of discretion.

## B. Substantive Reasonableness

Rogers also challenges his 24-month sentence as substantively unreasonable, again questioning Clary's credibility. The deferential abuse-of-discretion standard applies to review of the substantive reasonableness of a sentence too. *See United States v. Gordon*, 710 F.3d 1124, 1160 (10th Cir. 2013).

We will not reverse a sentence following revocation of supervised release if the record establishes the sentence is "reasoned and reasonable." *United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (internal quotation marks omitted). "A 'reasoned' sentence is one that is procedurally reasonable; and a 'reasonable' sentence is one that is substantively reasonable." *Id.* (alterations and internal quotation marks omitted). *United States v. Vigil*, 696 F.3d 997, 1001 (10th Cir. 2012) (internal quotation marks omitted). Procedural reasonableness focuses on "whether the district court committed any error in calculating or explaining the sentence." *Friedman*, 554 F.3d at 1307. "Substantive reasonableness involves whether the length of the sentence is reasonable given all the circumstances

of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007). Rogers questions the latter.

We will not reweigh the relevant factors on appeal because "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a)." *Gall*, 552 U.S. at 51 (internal quotation marks omitted). "That we might reasonably have concluded a different sentence was appropriate is insufficient to justify reversal of the district court." *Friedman*, 554 F.3d at 1307-08 (alterations and internal quotation marks omitted). After all, the facts and law often "fairly support" a range of possible outcomes. *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). If the sentence imposed "falls within the realm of these rationally available choices," we defer to the district court. *Id.*

Because Rogers committed a class B felony, the statutory maximum for violating a condition of supervised release is three years. 18 U.S.C. § 3583(e)(3). With a criminal history category of IV, his advisory Guidelines range was 12 to 18 months. Supp. R., Vol. II at 43; *see also* USSG § 7B1.4(a) and (b)(3). Rogers complains about the upward variance (24 months), despite acknowledging a trial judge's superior ability to assess the facts and weigh the § 3553(a) factors. *See* Aplt. Opening Br. at 26-27 ("Appellant acknowledges that the district court was in a superior position to find facts and judge their import under § 3553(a) in this case, and since the district court saw and heard the evidence, and made credibility determinations, that it had full knowledge of the facts and gained insights not conveyed by the record." (citing *Gall*, 552 U.S. at 51)).

The sentence and upward variance are substantively reasonable. Though above the Guidelines range, the 24-month sentence is within the statutory maximum. The judge justified the sentence by applying the § 3553(a) factors. She carefully considered the nature and circumstances of the violations, as well as Rogers' history and characteristics. In addition, she identified "sufficiently compelling" justifications for an upward variance, *Gall*, 552 U.S. at 50. She discussed Rogers' "violent behavior" and "pattern of violence," which began at age 12 and "has continued during his terms of supervised release." R., Vol. II at 103-04. She then explained why her evaluation of the relevant factors "separate[s] [Rogers] from the mine run of similarly situated defendants," warranting an upward variance:

> The violations for which the defendant appears today reflect not only his unwillingness to comply with the conditions of release but also his refusal to rehabilitate from his severe and disturbing pattern of abuse towards women.
> The abuse inflicted by defendant while under post-conviction supervision is of great concern to the court and is consistent with and repetitive of the violence perpetrated by the defendant against others in the past despite the efforts of the probation office to monitor him and provide mental health treatment to assist with rehabilitation.
> Defendant's criminal history, combined with the violation of supervised release [condition] number 1, represent the dangerous pattern of violence in which the defendant has engaged throughout most of his life and reflects his propensity for violence in the future and his continued danger to the public.

*Id.* at 104-05. Against this backdrop, the sentence imposed certainly "falls within the realm of . . . rationally available choices." *See McComb*, 519 F.3d at 1053.

9

### III.  Conclusion

We affirm the revocation and the resulting sentence imposed by the district court.

Entered for the Court

Terrence L. O'Brien
Circuit Judge